ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of EUGENE KULL, deceased.

[Decided May 6th, 1926.]

Wills—Probate—Testamentary Capacity—Testator Made Two
Wills on Two Succeeding Days, the First Favorable to Wife,
the Second to a Daughter of a Former Marriage—Evidence
Showed that He Did So Deliberately, as He Said, to Have
Peace in the Family, and His Wife Was Insistent and Disa-
greeable About it to Him—Though Suffering from a Serious
Disease, There Seems Ample Evidence of Sufficient Mental
Capacity.

*Mr. Theodore G. Hindenlang,* for the proponent.

*Mr. Charles M. Myers,* for the caveator.

KOCHER, ADVISORY MASTER.

Eugene Kull, late of the city of Newark, died on Novem-
ber 12th, 1925, he having committed suicide. He left him
surviving as his next of kin a widow, his third wife, whom he
had married about three years prior to his death, and Anna
Stein, a daughter by his first wife. Decedent left a last will
and testament dated May 2d, 1925, wherein and whereby he
left $5 to his wife and the residue of his estate to his
daughter, against the probate of which will a *caveat* was filed
by his widow, Minnie Kull.

The testimony shows that the will was executed in accord-
ance with the statute, and the attack is upon the ground of
lack of testamentary capacity.

The will in question was drawn by Michael J. Estrin, a
counselor-at-law of this state, who testified that he was in the
habit of calling upon a client who resided in the upper flat
of the house of which Kull occupied the lower part, and that
one day Mrs. Kull stopped him as he was leaving the house
after a visit to his client and told him she wanted him to

prepare a will for her husband, leaving everything to her. He thereupon stated that he would have to see her husband and obtain the instructions for the will from him, and an appointment was made to meet the husband at his butcher shop in the city of Newark.

Estrin called upon Kull, and, during the conversation with him, Kull told him that he had been having "lots of trouble" with his wife, and that she was insisting that he make a will leaving everything to her; that she was pestering the life out of him, and that the only way to have peace would be to satisfy her, and he asked whether, if he made a will, that would prevent him from making another one, and he was told that he could make as many as he pleased, and, after further discussion, Kull decided, for the sake of peace, to execute a will in favor of his wife, in her presence, and give it to her so that he could have peace in his home, and he instructed the witness to prepare another will leaving the entire estate to his daughter, and if, at a subsequent time, his marital relationship was better, he, subsequently, would make a new will, and, if the status was the same, he would let the second will stand.

Estrin accordingly drew a will leaving $500 to the testator's daughter and the residue of the estate to his wife, which will was dated May 1st, 1925, and was executed at Kull's home in the presence of the wife, and, after execution, delivered to her. On the following day, May 2d, Estrin proceeded to Kull's place of business, and had the second will, which is now attacked, executed by Kull.

Estrin further testified that he did not witness the first will, because he knew in advance that it would not be the last will, and did not want to witness it; that he drew it at the testator's request in order to satisfy the wife and have peace in the family. It appears from the testimony that Mrs. Kull knew the combination of Kull's safe and also had a key to the door of the shop. James Harrison, who was employed by Mr. Kull as an assistant, testified that Kull told him, "In case anything happens to me, my wife always asked me to make a will, * * * so I made the will and made another

will the following day, and if anything happens to me * * *
you will find that will in the candy store in the safe," where
the will was, in fact, found after Kull's death.

As regards testator's testamentary capacity, it is fully
proven that the testator had suffered from syphilis for at
least three years prior to his death.   Dr. Snavely testified
that he examined him several times in the City Hospital
where he went for treatments; that he was a man fifty-five or
fifty-six years of age, suffering ·from a four-plus case of
syphilis; that there is a possibility of a "mental condition"
following a four-plus Wasserman, but that there are cases
that do not have any; that he found the testator depressed
and very melancholy about himself and his finances; that
he asked the testator his reason, and received the reply that
he. was running a butcher shop and he thought everything
was going to pieces; that he had no money and his financial
condition was bad.   The doctor further testified that he
thought Kull could realize his nearest relatives, and that
there was no question about that; that he was very change-
able and suspicious; that he last saw him in the latter part
of December, 1924, and that he was not cured when he left
the hospital; that upon these facts he formed the opinion
that he was incompetent to make a will.   Two other physi-
cians were called who testified substantially to the same
effect.

There was a considerable volume of testimony to the effect
that Kull was unable to transact business.   On the other
hand, there is the testimony of both Mr. Estrin and of Jack
Rosenberg, the other witness to the will, that when they went
to the butcher shop on the 2d of May to have the will exe-
cuted they were obliged to wait for three-quarters of an hour
or more until Mr. Kull could find leisure from waiting on
customers to execute the· will.

The rule is settled that the courts of this state guard the
right of testamentary disposition jealously.   They hold that
this right may be exercised by a person of very moderate
capacity.   He may not be able at all times to recollect the
names of persons or the families of those with whom he has

been intimately acquainted. He may at times ask idle questions and repeat those which have been asked and answered. He may not have sufficient strength of memory and vigor of intellect to digest all parts of a contract and yet be competent to make a will. *In re Haines' Estate, 3 N. J. Adv. R. 1296; Loveridge v. Brown, 3 N. J. Adv. R. 1050.*

It is also settled that proofs of attempts to commit suicide, followed by suicide, exhibit at most but a temporary mental affliction, having no reference to the antecedent or subsequent periods of time. *Koegel v. Egner, 54 N. J. Eq. 623.* And the rule universally followed is that if testator is capable of recollecting of what his property consists, and who, either in consequence of ties of blood or of friendship, should be the objects of his bounty, and has a mind sufficiently sound to enable him to know and to understand what disposition he wishes made of his property after his death, may make a valid will. *Ward v. Harrison, 3 N. J. Adv. R. 470; In re Freeman's Will, 3 N. J. Adv. R. 484; 2 N. J. Mis. R. 642.*

There can be no doubt that in the case under consideration the testator was highly depressed and emotional, subject at all times to fits of weeping; that he was suffering from syphilis, complicated with other troubles, and that for at least two years prior to his death he had very poor health. On the other hand, there is abundant evidence that the time he executed the will he was able and competent to transact business. The very circumstances surrounding the execution of the will show keen judgment, because, as a matter of fact, the very first thing after leaving his deathbed in the hospital, Mrs. Kull went directly to the butcher shop and demanded from the person who had purchased it from Mr. Kull in the meantime, all of Mr. Kull's papers, which were given to her. Estrin is a young attorney with an irreproachable character, and there is no reason whatever to disbelieve his story, unusual though it may be. If verification were needed, it is found in the fact that Kull was afraid to keep the will in his possession, and placed it where he knew his wife would not have access to it, and this is again verified by

the fact that the will was found in the safe where the witness testified Kull told him it would be found.

That there was great friction between Mr. and Mrs. Kull is abundantly proven.  Numerous witnesses testified to this fact, and it is further evidenced by her entering into a separation agreement with him in the latter part of 1924, or early part of 1925, whereby she received $1,000.  She says that most of this was returned to Kull, but her manner on the stand and her contradictory testimony on this score appears to be of little value.  Further, in August, 1925, she engaged an attorney to procure a divorce for her.  The petition was filed, subpœnas issued and served, and an application was made for counsel fee and separate maintenance.  A counsel fee of $50 was allowed and paid and an order that Kull pay his wife $15 a week made.  Later on counsel was instructed to discontinue the divorce proceedings.  In connection with conducting his defense to the divorce suit, Kull gave his attorney an elaborate statement of facts as the basis of the preparation of an affidavit which was introduced in evidence.  As to testator's statements in regard to his financial difficulty, it is abundantly proven that at that time his business was falling off by reason of the fact that he was too ill to give it the attention that it required, and the fact unquestionably is that he was worried about his business.

Applying the rules hereinbefore laid down to the case under consideration, I do not think that there is any question but that the testator possessed the mental capacity fixed by these rules, and I will advise a decree that the will be admitted to probate.